IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| TRAVIS P. FAULKNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:10-CV-081-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 16), this case has been transferred to the undersigned for final ruling. For the reasons set forth herein, the Plaintiff's Motion for Summary Judgment (Doc. 24) is **DENIED** and the decision of the Commissioner is affirmed.

### I. BACKGROUND

#### A. Procedural History

Travis P. Faulkner seeks judicial review of a final decision by the Commissioner of Social Security, which found that Plaintiff was not entitled to supplemental security income under Title XVI of the Social Security Act (Act). On June 3, 2001, Plaintiff applied for supplemental security income, claiming that he had been disabled since August 1999, due to attention deficit hyperactivity disorder (ADHD), arthritis, and severe emotional problems. (Tr. at 53). His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). That hearing was held on February 4, 2004. (Tr. at 416).

On March 11, 2004, the ALJ found that Plaintiff was capable of working and denied Plaintiff's claim for disability benefits. (Tr. at 496-97). Plaintiff then appealed to this Court, which remanded the case to the ALJ to determine whether Plaintiff can perform jobs which exist in substantial numbers in the national economy. (Tr. at 497, 514). A second administrative hearing took place on May 29, 2008. (Tr. 575). Subsequently, on February 25, 2010, the ALJ found that Plaintiff could no longer perform his past relevant work, but found that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (Tr. 483-84). On June 18, 2010, Plaintiff brought this action for review of the final decision of the Commissioner of Social Security. (Doc. 1 at 1).

**B.      Factual History**

   **1.      Age, Education, and Work Experience**

Plaintiff was born on October 22, 1983. (Tr. at 53). He has a high school education and prior work experience as a housekeeper, janitor, dishwasher, cashier, and cook. (Tr. at 196).

   **2.      Documentary Medical Evidence**

In a mental health assessment conducted in 1999, David Sabine, Clinical Psychologist for Rose Street Mental Health Care, diagnosed Plaintiff with moderate to severe attention deficit hyperactivity disorder (ADHD) and a depressive disorder not otherwise specified. (Tr. at 389-393). Dr. Sabine also determined that Plaintiff had borderline intellectual functioning and paranoid traits. (Tr. at 389-393).

On June 1, 2001, when Plaintiff was examined at Scottish Rite Hospital for Children, a CT scan of his pelvis showed bilateral sacroiliitis. (Tr. at 206). Plaintiff had been previously diagnosed with asthma and sympathetic reflex syndrome. (Tr. at 206). In November 2001,

Richard E. Eckert, Ph.D., categorized Plaintiff as suffering from psycho-social stressors (occupational, social and educational problems) and determined that his condition was likely to remain stable. (Tr. at 235). Dr. Eckert and Dr. Donald John noted that, according to Plaintiff's mother, Plaintiff suffered from occasional staring spells which she classified as seizures. (Tr. at 235, 269).

From April 1998 to July 2001, Plaintiff also had 58 individual, family, or group sessions with Ron Burks, counselor, to address similar issues. (Tr. at 403). From July 2001 to October 2002, Plaintiff had weekly sessions with Christopher T. Fletcher, a licensed professional counselor, during which he addressed his anger, emotional immaturity, and inappropriate sexual behavior. (Tr. at 321-330, 363-388). In December 2006, Dr. Meenakshi Patel gave Plaintiff a psychiatric evaluation and diagnosed Plaintiff with Bipolar I Disorder. (Tr. at 570). Plaintiff was treated with Zoloft, Straterra, Depakote, and Risperdal. (Tr. at 571).

### 3. Hearing Testimony

At the May 29, 2008, administrative hearing following the district court's remand, Plaintiff, while represented by counsel, testified that he was most recently employed as a dishwasher. (Tr. at 580). The job ended in January 2008, when, according to Plaintiff, his employer cut his hours and eventually let him go. (Tr. at 580, 581). Plaintiff testified that his diabetes, numb legs, and other medical problems caused him pain. (Tr. at 581). Plaintiff stated that he suffers from bipolar disease and paranoia. (Tr. at 597). Plaintiff also testified that in the past year his diabetes worsened, causing his legs to go numb. (Tr. at 597). According to Plaintiff, he was unable to perform the essentials of his job when his legs went numb because he had trouble standing up while working. (Tr. at 597-98).

For his pain, Plaintiff took Celebrex but then stopped because it was too expensive. (Tr. at 599). An ordinary day for Plaintiff involved getting up at 2:00 or 3:00 in the morning and listening to the radio. (Tr. at 600). Plaintiff dresses, grooms, and showers himself. (Tr. at 605).

When the ALJ asked the vocational expert what occupations were available to an individual of the same age, education, and work experience as Plaintiff, who could also: perform light work activity; stand and/or walk for up to five hours a day; crouch, climb, kneel, and crawl occasionally; and perform two- to three-step tasks, but not work with the public; the VE testified that occupations including an electronics worker, riveting machine operator, and assembler were available. (Tr. at 614-15).

**C.    ALJ's Findings**

The ALJ found Plaintiff had engaged in substantial gainful activity during periods of time relevant to this decision (most of 2003 through 2007). (Tr. at 467). He also found Plaintiff, since reaching the age of 18, did not have an impairment, or combination of impairments, listed in or medically equal to a listed impairment. (Tr. at 477). He determined Plaintiff had the Residual Functional Capacity ("RFC") to perform a modified range of light work activity, in that Plaintiff could maintain a job requiring him to stand and/or walk for up to five hours a day. (Tr. at 479). He could stoop, crouch, climb, kneel, and crawl occasionally. (Tr. at 479). He could also perform two- to three-step tasks, but could not work with the public. (*Id*.).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, but based on the VE's testimony, could perform other work in the national economy consisting of an electronics worker, riveting machine operator, and an assembler. (Tr. at 482-83, 615). Accordingly, the ALJ found that, since attaining age 18, Faulkner was capable of performing

other work existing in significant numbers in the national economy. (Tr. at 483). The ALJ concluded that Faulkner was not under a disability since October 21, 2001, the date he reached age 18, through the date of the decision. (Tr. at 484).

## II. ANALYSIS

A.  **Legal Standards**

    1.  **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.2d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

    2.  **Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

> 1. An individual who is working and engaging in substantial activity will not be found disabled regardless of medical findings.
>
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

B.  Issues for Review

   1.  Did the ALJ err in determining Plaintiff can perform jobs which exist in substantial numbers in the economy?

Plaintiff argues that the ALJ erred by not asking the VE a hypothetical question that included Plaintiff's moderate limitations in the domain of concentration, persistence, and pace – suggesting that the ALJ also failed to properly accommodate said limitations. (Doc. 24-2 at 7). Plaintiff's argument is not supported by the record, however.

To the extent that Plaintiff challenges the ALJ's RFC findings, the Court finds that the ALJ's RFC findings are supported by substantial evidence. The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. 20 C.F.R. § 404.1546(c). The ALJ found that the moderate limitations in concentration, persistence, and pace do not qualify as "listed mental impairment[s]" and therefore "are not a residual functional capacity assessment." (Tr. at 478). However, the ALJ thoroughly discussed Plaintiff's limitations and incorporated them into the "two to three step tasks"portion of the RFC. (Tr. at 479).

In addition, Plaintiff testified that his mental condition generally improved with treatment and medication. (Tr. at 479, 606-07). Dr. Richard Eckert, Ph.D., determined that Plaintiff was oriented to person, time, and place. (Tr. at 234, 469). The ALJ noted that Dr. Eckert concluded that Plaintiff's medical condition was likely to remain stable. (Tr. at 235, 481). The ALJ also noted the January 2002 assessment of state agency psychologist, Norvin Curtis, Ph.D, who rated Plaintiff with moderate difficulties in maintaining concentration, persistence, and pace. (Tr. at 236-53, 254-61, 482). These ratings are consistent with the ALJ's ratings. (Tr. at 478). Further, in the testimony from the ALJ hearing, Plaintiff stated that if he had the "right tools" and the

right "training," he would "be able to sit down and do [the work]." (Tr. at 611).

The Court further concludes that the hypothetical question posed by the ALJ to the VE was sufficient. A hypothetical question is sufficient where it reasonably incorporates all disabilities recognized by the ALJ in his RFC finding. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, the hypothetical question incorporated all the disabilities accounted for by the ALJ in his RFC findings. (Tr. at 614). The ALJ found that

> since attaining age 18, the claimant has had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 416.967(b), with some restrictions. The claimant can stand and/or walk for a total of five hours in a work day. He can stoop, crouch, climb, kneel, and crawl occasionally. He can perform two to three step tasks. He cannot work with the public.

(Tr. at 479). In his hypothetical question to the vocational expert, the ALJ posed the following limitations: an individual with the same age and education; limited to two- and three-step tasks; who is not able to work with the public; who is limited to the occasional stooping, crouching, climbing, and kneeling; would not be able to crawl; and would be able to stand and/or walk for a maximum of five hours in a work day. (Tr. at 614). Further, the ALJ addressed Plaintiff's problems with concentration, persistence and pace, by including in the hypothetical the restrictions that Plaintiff was limited to two- or three-step tasks. (Tr. at 614).

   2.   **Did the ALJ err at the first step of the sequential evaluation process by finding that Plaintiff's employment after his disability onset date constituted substantial gainful activity rather than unsuccessful work attempts?**

Plaintiff argues that the ALJ, on remand in February 2010, erred by finding that Plaintiff's employment after his disability onset date constituted substantial gainful activity rather than unsuccessful work attempts. (Doc. 24-2 at 4). However, the Court need not reach this

question.  Plaintiff acknowledges that he was not harmed by the ALJ's finding on remand that he engaged in substantial gainful activity from 2003 to 2007, since the ALJ proceeded to step five of the sequential evaluation process.  (Doc. 24-2 at 4, n.1).  *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (reversal is appropriate only if the applicant shows that he was prejudiced); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (same).

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 24) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** on July 6, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE